UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMERALDA CASTANON and JOHN DURON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WINCO HOLDINGS, INC., an Idaho Corporation, doing business as WINCO FOODS; and DOES 1-10, inclusive, <br><br> Defendants. | No. 2:20-cv-01656-MCE-JDP <br><br> **MEMORANDUM AND ORDER** |

Through the present class action proceeding, Plaintiff Esmeralda Castanon ("Plaintiff")[1] challenges various wage and hour practices utilized by her employer, Defendant Winco Holdings, Inc., doing business as Winco Foods ("Defendant" or "Winco"), both on her own behalf and on behalf of others similarly situated. According to Plaintiff, Winco has failed 1) to pay its employees all wages owed, including overtime; 2) to provide legally compliant meal and rest periods; and 3) to pay all wages due upon separation. Plaintiff further alleges that wage statements provided by Winco have been legally non-compliant.

---

[1] While John Duron was initially named as a Plaintiff along with Ms. Castanon, Duron was dismissed from this action by Stipulation and Order filed July 16, 2021 (ECF No. 21).

1

Winco previously moved to dismiss Plaintiff's First Amended Complaint ("FAC") on grounds that because the allegations contained therein were generic and lacked specificity, they failed to state any legally cognizable claim under Federal Rule of Civil Procedure Rule 12(b)(6).[2]  That Motion, which also moved to strike, in accordance with Rule 12(f), the FAC's class action allegations as formulaic and conclusory, was granted in part and denied in part on September 30, 2021.  ECF No. 22.  Because Plaintiff was accorded leave to amend, a Second Amended Complaint ("SAC") was filed on October 20, 2021.  ECF No. 25.  Now before the Court is an additional Motion to Dismiss, or Alternatively to Strike, on the same grounds.  As set forth below, that motion is DENIED, except with regard to a portion of the Fourth Cause of Action, which is GRANTED.[3]

## BACKGROUND[4]

Winco operates at multiple locations in California as a retailer providing supermarket products to consumers.  Plaintiff was employed as a non-exempt customer service employee between 2001 and 2019 (her title was Loss Prevention Agent) at Winco's location in Chico, California.

Plaintiff alleges that she, as well as all other non-exempt Winco employees working in California, were required to check in and out of their shifts by using an electronic time clock that rounded total time worked each day to the nearest fifteen-minute inverval.  While minutes were rounded to the closest fifteen-minute period (with an employee working seven minutes rounded down but eight or more minutes rounded

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] Having determined that oral argument will not be of material assistance, the Court ordered this Motion submitted on the briefs in accordance with E.D. Local Rule 230(g).

[4] The allegations in this section are drawn, at times verbatim, from the allegations of Plaintiff's SAC, ECF No. 25.

2

up), according to the SAC, Winco's time clock also calculated seconds and <u>always</u> rounded down to the nearest minute. Plaintiff consequently alleges that even if she worked 55 seconds of any given minute the time would always revert to the previous minute. Therefore, if Plaintiff or any other class member worked for 8 hours, 7 minutes and 55 seconds, their time would be rounded down to 8 hours, with the same dichotomy occurring not only for time worked between 7 and 8 minutes, but also between 22 and 23 minutes, 37 and 38 minutes, and 52 and 53 minutes. <u>See</u> SAC, ¶ 21.

Plaintiff alleges that by always rounding total seconds down to the previous minute in this matter, Winco's rounding policy systematically undercompensates its employees and is not neutral on its face. Moreover, citing her own personal experience, Plaintiff alleges that 43 percent of her shifts over 8 hours fell between 8:01 and 8:07, hours as opposed to only 5 percent falling between 8:08 and 8:14, making it far more likely that her time was rounded down rather than up. Plaintiff further alleges that some 80 percent of her total shifts worked from May of 2019 to July of 2019 were rounded down. <u>Id.</u> at ¶ 24. Moreover, during the same period, Plaintiff specifically asserts she worked in excess of 8 hours a day or 40 hours a week during the weeks ending on May 4, 11, 18, 25, 2-10, June 1. 8, 15, 22, 29, 2019, and July 6, 2019, and therefore would have been entitled to time and a half pay during those periods. <u>Id.</u> at ¶ 27.

In addition to impacting overtime pay, Plaintiff also alleges she was entitled to double time (working in excess of 12 hours a day or eight hours on the seventh day of the workweek) on the weeks ending on January 28, 2017, February 25, 2017, April 21, 2017, May 5 and 19, 2017, and December 15, 2018, among others. <u>Id.</u> at ¶ 29.

As an alternative to Plaintiff's claim that because the rounding practices employed by Winco were not neutral, she and other class members were deprived of the total wages they were owed, Plaintiff further points to bonuses that were not included in her regular rate of pay for purposes of calculating overtime. According to Plaintiff, the bonuses, which were in the form of gift cards, were non-discretionary in nature because the only requirement for entitlement was that an employee was hired before a certain

3

1  date, have hours worked in the bonus period and be actively employed at the time a
2  particular bonus was paid.  Id. at ¶ 31. Therefore, Plaintiff contends, the amounts paid
3  should have been factored into any overtime calculation.  She points to one specific
4  instance, where she was paid a bonus of $109.46 during the pay period from April 22,
5  2018 to May 5, 2018, for worked performed in the 26 weeks prior to March 3, 2018.
6  Plaintiff avers that the bonus was not calculated within her regular rate of pay and,
7  because she worked 23.75 day overtime hours, 14 night overtime hours, 1.5 day double
8  time hours, and 3 double time night hours during the pay period, should have been
9  included in calculating those amounts.  Id. at ¶ 32.
10        Plaintiff goes on to claim that she and others were also not provided lawful meal
11  and rest breaks and were not compensated for breaks that were missed.  Specifically,
12  she asserts she was not provided a meal period as required when working shifts in
13  excess of five days on three separate occasions between May 5, 2019, and July 5,
14  2019.  Id. at ¶ 33.  Plaintiff further asserts that on another 13 occasions between May 16,
15  2019, and July 3, 2019, the meal breaks she did receive were not the 30-minute
16  uninterrupted period mandated by law.   Plaintiff appears to allege that these failures
17  were due at least in part to company personnel policies prohibiting employees from
18  leaving their retail store for meal and rest breaks "without permission from management."
19  Id. at ¶ 35.  According to Plaintiff, she and others were impeded and/or discouraged from
20  taking breaks when a manager was either unavailable or could not be readily located.
21        In addition to alleging that Winco failed to pay wages owed and further failed to
22  provide mandated meal and rest breaks, Plaintiff also alleges a failure on Winco's part to
23  provide accurate, lawful itemized wage statements to both herself and other class
24  members because the correct rates of pay were not properly itemized.  Id. at ¶ 47.  On
25  the wage statement for the period from April 21, 2019, to May 5, 2019, for example, she
26  claims that the pay statement did not reflect the correct time and a half rate for the night
27  overtime she worked.  In the same statement, Plaintiff also avers that the payroll codes
28  ///

4

used failed to itemize the total hours and rates of pay, making it impossible for her to determine how overtime adjustments were calculated. Id. at ¶ 48.

Finally, when Winco terminated Plaintiff's employment on July 15, 2019, rather than paying her immediately for all wages due and unpaid as of that time, Plaintiff claims that she was underpaid due to all the factors discussed above, including improper rounding, and unpaid meal and rest period premiums occasioned by Winco's failure to provide legally compliant breaks. Id. at ¶ 51.

## STANDARD

### A.   Motion to Dismiss under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

///

1    pleading must contain something more than "a statement of facts that merely creates a
2    suspicion [of] a legally cognizable right of action")).
3          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket
4    assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and
5    quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard
6    to see how a claimant could satisfy the requirement of providing not only 'fair notice' of
7    the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
8    Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to
9    relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their
10   claims across the line from conceivable to plausible, their complaint must be dismissed."
11   Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
12   actual proof of those facts is improbable, and 'that a recovery is very remote and
13   unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
14         A court granting a motion to dismiss a complaint must then decide whether to
15   grant leave to amend. Leave to amend should be "freely given" where there is no
16   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
17   to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
18   amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
19   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
20   be considered when deciding whether to grant leave to amend). Not all of these factors
21   merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .
22   carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
23   185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that
24   "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest
25   Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
26   1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th
27   Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
28   constitutes an exercise in futility . . . .")).

**B.     Motion to Strike Under Rule 12(f)**

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations omitted).  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.  Id.

## ANALYSIS

**A.     First Cause of Action for Failure to Pay Wages, Including Overtime**

Plaintiff's previously operative pleading, the FAC, generically alleged that Winco failed to pay overtime and double time wages as authorized by law.  While Plaintiff claimed that Winco's time clocks tracked non-exempt employee's hours in a manner that "improperly rounded" time and therefore deprived employees of their entitlement to properly calculated wages, Plaintiff offered no explanation as to how such rounding was employed in favor of Winco's interests as opposed to those of its employees, and therefore was not neutral.  Instead, Plaintiff alleged only that she worked in excess of 40 hours during eight different weeks between May 4, 2019, and July 6, 2019, without providing any further detail.

In granting Winco's initial motion to dismiss as to the First Cause of Action, the Court found these cursory allegations did not meet the minimum pleading requirements for a wage and hour case as set forth in Landers v. Quality Commc'ns, Inc., 771 F.3d 638 (9th Cir. 2014).  In Landers, the Ninth Circuit made it clear that to pass pleading

muster in such a case "detail regarding a given workweek," including the length of the average week, the amount of overtime wages believed to be owed, and other facts "that will permit the court to find plausibility" must be provided. Id. at 645, 646.

In now moving to dismiss Plaintiff's subsequently filed SAC, Winco argues that Plaintiff has still not pled a cause of action that meets Landers' directive. The Court disagrees. Unlike its predecessor, the SAC plausibly alleges how the rounding practices employed by Winco, in always rounding seconds down to the previous minute as set forth above, impermissibly favors Winco when rounding to the nearest 15-minute interval in certain circumstances. Although the Ninth Circuit has approved, in Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership, 821 F.3d 1069, 1075. 1076 (9th Cir. 2016), rounding practices as long as said practices are neutral, Plaintiff has adequately demonstrated, at least for pleading purposes, that Winco's practices in rounding seconds down to the nearest minute is not always neutral. Even if the detriment from such rounding is minor, the California Supreme Court has held that a "de minimis" defense does not apply to California employers. Troester v. Starbucks, 5 Cal. 5th 829, 842 (2018).

Plaintiff goes on to allege that these rounding practices impacted her directly. According to the SAC, between May 2016 and July 2019, approximately 80 percent of her shifts between 8 and 9 hours were rounded down, resulting in a net underpayment, particularly since 43 percent of her shifts over 8 hours were between 8:01 and 8:07 hours, as opposed to only 5 percent between 8:08 and 8:14 hours. SAC, ¶ 24.

While Winco claims that even in the face of these allegations, Plaintiff has to provide more precise details concerning the length of her average shifts and workweek as well as the amount of wages she believes is owed, the Court believes that what she has provided is sufficient. As Winco itself concedes, the salient issue is in fact whether Plaintiff has alleged facts that permit the Court to draw reasonable inferences suggestive of a claim entitling Plaintiff to relief (see Mot., ECF No. 28-1, 3:26-27), and the Court concludes that the new rounding allegations meet that prerequisite.

In addition to augmenting her factual allegations concerning the potential bias of Winco's rounding policies, Plaintiff has also added new allegations pertaining to Winco's payment of "gift card" bonuses that, because they apply to all employees working during the bonus period who are still employed at the time a bonus is distributed, are non-discretionary in nature and consequently should have been included in their regular rate of pay but were not.  SAC, ¶ 31.  The Court again disagrees with Winco's assertion that these allegations are not stated with the requisite detail, since Plaintiff alleges that she received bonuses in the form of such gift cards and goes on to cite a specific example where the value of the git card was not included within her regular rate of pay.  Id. at ¶ 32.

Given the new averments contained in the SAC, the Court concludes that the First Cause of Action, for failing to pay proper wages, survives Winco's pleading challenge for failure to state a claim.

> **B.     Second and Third Causes of Action for Meal and Rest Period Violations**

Plaintiff previously alleged, in her FAC, that class members were "regularly required to work shifts in excess of five hours without being provided a lawful meal period and over ten-hour days without being provided a second lawful meal period as required by law.  FAC, ¶ 30.  She also further alleges they "were systematically not authorized to take one net ten-minute paid, rest period for every four hours worked" as also legally mandated.  Id. at ¶ 39.  Finally, she goes on to claim, on information and belief and without further detail, that "Class Members were impeded and/or discouraged from leaving the store for meal and/or rest breaks."  Id. at ¶ 31.

The Court found these conclusory allegations devoid of supporting factual allegations and consequently lacking for pleading purposes.  In her SAC, however, Plaintiff provides further detail.  She alleges that Winco's Company Personnel Policies specifically provide that "[r]etail employees are not permitted to leave the store interior on a rest break without permission from management."  SAC, ¶ 35.  Plaintiff claims this

policy applies to both rest and meal breaks.  Id.  As a result, if manager is unavailable or cannot be readily located, Winco employees may be "impeded and/or discouraged" from taking meal and rest breaks.  Id. at ¶ 36.

According to Plaintiff, because Winco thus fails to relinquish all control over its employees during legally mandated breaks, its practices violate California law as articulated in Brinker Restaurant Corp v. Superior Court, 53 Cal. 4th 1004 (2012) and Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257 (2016).  Id. at ¶ 37.  While the California Supreme Court, in Augustus, noted that particularly with a short break period "one would expect that employees will ordinarily have to remain on site or nearby" (id. at 269-70), here Plaintiffs allege written personnel policies that prohibit an employee from even leaving the inside of a store without management approval.  On its face, such a policy would prohibit even a short walk outside or a smoke break.

These allegations are sufficient to state a viable cause of action.

### C.  Fourth Cause of Action for Failure to Timely Pay Wages Owed Upon Separation

Plaintiff's Fourth Cause of Action, which seeks waiting time penalties based on Winco's alleged failure to timely pay wages owed upon separation, purports to be based upon the requirements of California Labor Code §§ 201 and 202, which provide that wages must be paid within a certain time following an employee's separation from service.  The two statutes, however, involve different circumstances:  Section 201 requires that in the event an employee is discharged by his or her employer, the wages earned and unpaid at the time of discharge are due and payable immediately.  Section 202, on the other hand, gives the employer 72 hours to do so if it is the employee who quits.

The Court previously dismissed this claim because the FAC contains no facts about just how Plaintiff separated from employment, indicating only that her last day at work was July 15, 2019.  FAC, ¶ 19.  Consequently, the court could not determine on

///

what basis Plaintiff sought to hold Winco liable, let alone ascertain what final wages were owed and not paid.

Now, in the SAC, Plaintiff avers that her employment with Winco was involuntarily terminated on July 15, 2019, and, given that termination, she was immediately entitled to all wages earned and unpaid upon her discharge. She claims that those wages included unpaid straight and overtime caused by improper rounding, as well as unpaid wages occasioned by Winco's failure to properly calculate her regular rate of paid (by way of bonuses, for instance), and all premiums due because of missed and/or interrupted meal and rest period. See SAC, ¶¶ 51-52.[5]

Although the Court believes these allegations suffice for purposes of alleging a claim premised on Section 201, they do not state a claim for a Section 202 violation, and Plaintiff cannot be a class representative for an injury she did not experience and has no standing to assert. Consequently, Winco's Motion is GRANTED to the extent the Fourth Cause of Action asserts a claim premised on Section 202 but is otherwise denied.[6]

### D.  Fifth Cause of Action for Failure to Comply with Itemized Wage Statements

In the Fifth Cause of Action of her FAC, Plaintiff alleged that Winco failed to comply with the items required to be included in her wage statement under California law, including time records, meal periods, split shift intervals, and total daily hours worked. She failed to identify, however, even a single deficient wage statement.

Although the Court rejected those allegations given their lack of any factual specificity, in the SAC Plaintiff has alleged at least one wage statement with overtime adjustment codes that failed to itemize the total hours and rates of pay, making it impossible for her to determine how the adjustments were calculated. SAC, ¶ 48.

---

[5] In Naranjo v. Spectrum Security Services, Inc., 13 Cal. 5th 93 (2022), the California Supreme Court recently held that failure to pay premiums for violating the California Labor Code's meal and rest break provisions constitutes "wages" for purposes of waiting time penalties. Id. at 107-08.

[6] Plaintiff seeks leave to amend to add an additional named plaintiff who can properly represent former Winco employees who quit rather than, like Plaintiff Castanon, were terminated. Leave to amend on that basis will be accorded.

Moreover, to the extent that Plaintiff's Fifth Cause of Action is derivative of the unpaid wages/overtime and non-compliant meal and rest period claims already discussed above, which the Court deemed sufficient to withstand a motion to dismiss, the Fifth Cause of Action is adequately pled on that ground as well.

### E.    Sixth Cause of Action for Unfair Business Practices

Plaintiff's Unfair Business Practices claim under California Business and Professions Code §§ 17200, et seq., as set forth in the Sixth Cause of Action, is explicitly predicated upon the validity of Plaintiff's other state law claims. As a derivative claim, it rises and falls on the viability of those claims which the Court has already rejected. See, e.g., Lefevre v. Pac. Bell Directory, No. 14-cv-03803-WHO, 2014 WL 5810530 at *4 (N.D. Cal. Nov. 7, 2014) (dismissing derivative § 17200 because underlying wage/hour claims failed to satisfy minimum pleading requirements). Because, as stated above, Plaintiff has now identified viable claims that can serve as the factual predicate for her unfair business practices cause of action, her § 17200 claim also passes pleadings muster.

### F.    Class Action Allegations

In addition to moving to dismiss Plaintiff's substantive claims as discussed above, Winco reiterates its previous request, as already rejected in its challenge to the FAC, to strike Plaintiff's class allegations as impermissibly "formulaic and conclusory" because they state only that the requirements for class certification have been satisfied, with no real factual basis for such an assertion. While conceding that courts generally refrain from ruling on the issue of class certification at the pleadings stage, Winco nonetheless claims that Plaintiff has not pled enough facts to show any entitlement to relief on a class-wide basis.

As the Court already remarked in previously rejecting Winco's earlier challenge to Plaintiff's class allegations, the weight of authority holds that class action allegations should not be tested at the pleadings stage, and instead should be addressed only after one party has filed a motion for class certification, unless it is clear from the complaint

1  that no class claims can be maintained  See, e.g., Brown v. Hain Celestial Group, Inc.,
2  913 F. Supp. 2d 881, 887 (N.D. Cal. 2012).  Here, because Plaintiff has identified
3  allegations that may potentially apply on a class-wide basis, the Court cannot say at the
4  onset that class action treatment is unwarranted.  Moreover, while Winco cites several
5  unpublished decisions that have dismissed class action allegations at the pleadings
6  stage, such action is still rare in advance of a class certification motion.  See
7  Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal.
8  2011).

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 28) is DENIED, except with respect to the Fourth Cause of Action, which is GRANTED to the extent said cause of action asserts a claim under California Labor Code Section 202. Plaintiff may, but is not required to, file an amended pleading properly asserting a Section 202 claim not later than twenty (20) days after the date this Memorandum and Order is electronically filed.  If no amended complaint is timely filed, the claims dismissed by virtue of this Memorandum and Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  August 23, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

13